# Exhibit C

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN


ERIC D. RIGBY,                          )
                                        )
        Plaintiff,                      )
                                        )
   v.                                   )    Civil Action No.
                                        )    3:19-cv-00036
CROSSCHECK SERVICES, LLC,               )
d/b/a, OPTIO SOLUTIONS, LLC,            )
d/b/a QUALIA COLLECTION,                )
                                        )
        Defendant.                      )




DEPOSITION UPON ORAL EXAMINATION OF

PINKIE WOOD

TAKEN ON BEHALF OF THE DEFENDANT

NORFOLK, VIRGINIA

OCTOBER 10, 2019



1   Appearances:

2


3      SULAIMAN LAW GROUP, LTD.
       BY:  NATHAN C. VOLHEIM, ESQUIRE
4           2500 SOUTH HIGHLAND AVENUE
            SUITE 200
5           LOMBARD, ILLINOIS  60148
            (630) 568-3056
6           Nvolheim@sulaimanlaw.com
                 Counsel for the Plaintiff
7                    (Appearing via telephone)

8

       LIPPES MATHIAS WEXLER FRIEDMAN, LLP
9      BY:  BRENDAN H. LITTLE, ESQUIRE
            50 FOUNTAIN PLAZA
10          SUITE 1700
            BUFFALO, NEW YORK  14202
11          (716) 853-5100
            Blittle@lippes.com
12               Counsel for the Defendant
                     (Appearing via telephone)
13

14

15

16

17

18

19

20

21

22

23

24

25


ZAHN
COURT REPORTING
www.zahncourtreporting.com

```
1                      I N D E X

2

3   WITNESS                                    PAGE

4   PINKIE WOOD:

5       Examination by Mr. Little                4
                                                 22
6
        Examination by Mr. Volheim              17
7

8

9                    E X H I B I T S

10
                                               PAGE
11
    NO.DESCRIPTION
12
    1  Complaint
13
    2  Plaintiff's Amended Supplemental Answers
14         and Objections to Defendant's
           Interrogatories
15
    3  Subpoena
16

17
    (ALL EXHIBITS WERE MARKED PRIOR TO THE DEPOSITION)
18

19

20

21

22

23

24

25
```



1          Deposition upon oral examination of

2    Pinkie Wood, taken on behalf of the Defendant, before

3    Jill Hudnall Trail, Registered Professional Reporter, a

4    Notary Public for the Commonwealth of Virginia at

5    large, taken pursuant to notice, commencing at

6    10:30 a.m. on Thursday, October 10, 2019, at the

7    offices of Zahn Court Reporting, 208 East Plume Street,

8    Norfolk, Virginia; and this in accordance with the

9    Rules of the Supreme Court of Virginia, 1950, as

10   amended.

11

12          PINKIE WOOD was sworn and deposed on

13   behalf of the Defendant as follows:

14                        EXAMINATION

15   BY MR. LITTLE:

16        Q.      Good morning, Ms. Wood.

17        A.      Good morning.

18        Q.      My name is Brendan Little.  I am counsel

19   for Optio Solutions, LLC, and represent that company in

20   a lawsuit commenced by Erick Rigby in Federal Court for

21   the Western District of Wisconsin.

22          Thank you for appearing this morning.

23   I'm going to ask you a couple of questions related to

24   the allegations in that lawsuit.  At any time if you

25   didn't hear my question, didn't understand my question,



1  please speak up and ask me to repeat or rephrase the

2  question.  Otherwise, I'm going to assume that you

3  understood the question as asked.  Is that fair?

4      A.      Yes.

5      Q.      I apologize that both counsel are on the

6  phone this morning.  There might be a little bit of a

7  delay between our questions and your answers.  I will

8  do my best not to ask a question and speak over you

9  while you're giving an answer, and likewise I ask that

10 you try to let me finish my question before you respond

11 to the question.  Okay?

12     A.      Yes.

13     Q.      And also, obviously, we cannot see you

14 this morning, so it's more important than normal that

15 you continue to give us verbal responses: yes, no, I

16 don't knows.  We can't see your mannerisms or your

17 shoulder shrugs, because we're on the telephone this

18 morning.  Okay?

19     A.      Yes.

20     Q.      Okay.  What is your legal name?

21     A.      Pinky Elizabeth Wood.

22     Q.      And where do you reside?

23     A.      5316 Larkspur Road, Portsmouth, Virginia

24 23703.

25     Q.      And how long have you resided at that



1    address?

2          A.       I have owned that property since June of

3    1999.

4          Q.       Okay.  And if I can turn your attention

5    to Exhibit 3 this morning.

6          A.       Okay.

7          Q.       Do you have that in front of you?

8          A.       Yes, sir.

9          Q.       Okay.  And is it fair to say that this is

10   the subpoena that you were served with to testify this

11   morning?

12         A.       Yes.

13         Q.       Okay.  And you're appearing this morning

14   pursuant to that subpoena?

15         A.       Correct.

16         Q.       Who is Erick Rigby?

17         A.       Erick Rigby is my son.

18         Q.       Okay.  How often do you see your son,

19   Erick?

20         A.       Generally I see my son, Erick, once or

21   twice a year when I go there.

22         Q.       And go there meaning?

23         A.       When I go to Wisconsin.

24         Q.       Okay.  And, I guess, just so I make sure

25   that it's clear, your son does not reside in the State



1    of Virginia?  He resides in Wisconsin?

2           A.       That is correct.

3           Q.       And do you know how long your son has

4    resided in Wisconsin?

5           A.       I believe that he has lived there between

6    nine and ten years.  I don't remember, I don't recall

7    the exact date that he moved there.

8           Q.       How often do you speak to your son?

9           A.       Depending on what's going on, sometimes I

10   will talk to him once a month.  Sometimes I'll talk to

11   him five times a day.

12          Q.       Okay.  But is it fair to say that you're

13   in regular communication with him?

14          A.       Yes.

15          Q.       What was the telephone number that you

16   were using in January of 2019?

17          A.       Well, I may have used -- it may have been

18   on my cell phone at (757) 285-9440, or it may have been

19   on my cell phone (757) 319-0842.  I'm not really sure

20   which one.

21          Q.       Okay.  The 0842 number, is that a

22   personal cell phone or a work cell phone?

23          A.       It was my work cell phone, and it is now

24   my personal cell phone.

25          Q.       I'm sorry.  It was your personal cell



1    phone and --

2         A.        No, sir.  At that point in time, in

3    January of 2019, I worked for Hourigan Construction,

4    and that was my work cell phone.  I left Hourigan

5    Construction in February and turned it into my personal

6    cell phone.

7         Q.        Understood.

8                   And the 9440 number, was that a personal

9    cell phone then back in January of '19?

10        A.        That is the cell phone that is provided

11   to me by Peters & White Construction for their

12   business.

13        Q.        And do you still maintain that cell phone

14   today?

15        A.        Yes, I do.

16        Q.        Okay.  So in January of '19, you had both

17   the 9440 number and the number ending in 0842, and

18   that's still true today in October of 2019?

19        A.        That is correct.  Yes, sir.

20        Q.        The only difference is that the 0842

21   number was a work number back in January of '19, but

22   today it is a personal number?

23        A.        That is correct.

24        Q.        Did you receive a telephone call from

25   Optio Solutions, LLC?



1       A.      I am not sure who I received a phone call

2  from at this point.  That was a long time ago, and I

3  don't recall.

4       Q.      So you, as you sit here today, in October

5  of '19, you don't recall whether you received a

6  telephone call from Optio Solutions?

7       A.      No, sir.  I'm not sure it was from Optio

8  Solutions.  What I do recall was calling my son and

9  telling him I had received a call, and he got all

10  angry, and that's about as much as I remember.

11       Q.      Okay.  So let me make sure I understand

12  you.  You recall receiving a telephone call, but you're

13  not quite sure who the call was from?

14       A.      No, sir.  I'm not really sure.  I'm

15  sorry, but -- I apologize, sir.

16       Q.      Go ahead.

17       A.      But if it's not my business and it's not

18  my bills, I don't worry about it.

19       Q.      No.  I understand.  I just wanted to make

20  sure that we're saying the same thing.

21               You recall receiving a telephone call

22  regarding your son, correct?

23       A.      Yes, sir.

24       Q.      Okay.  But you do not remember who the

25  telephone call was from?



1          A.        No, sir.  I don't.  Like I said, if it

2   was a bill and someone called me, I would have asked,

3   "Who is this, and may I ask who is calling?"

4                   And typically what happens, because I

5   have six children, so I've had this happen quite a bit,

6   they will say, "I'm so and so from such and such

7   company, and can you give me so and so's phone number

8   or information?"  My response is no, because that's not

9   my job.  My job is to call the child, whichever one of

10  the six that it pertains to and say, "You got a call

11  from so and so.  You need to call them back."  And

12  that's -- that's my -- that's what I do all of the time

13  with any one of the six children that I have raised.

14         Q.        Okay.  And this telephone call that we've

15  been talking about this morning, do you remember when

16  you received that telephone call?

17         A.        No, sir.

18         Q.        Was this the only telephone call that you

19  can recall in the last year that you received regarding

20  your son, Erick?

21         A.        Truthfully, I don't track, sir.  I really

22  don't know.  It could have been this year.  It could

23  have been last year.  Again, I don't know.

24         Q.        Do you recall receiving a telephone call

25  from Optio Solutions at all?



1      A.      Sir, I don't recall anyone specifically

2  that I have received calls for, for my children,

3  because, again, I don't -- I don't give their

4  information out.  When I get the call, I give the

5  children a phone call.  I say, "Hey, you got a call

6  from so and so.  You need to contact them and take care

7  of whatever."

8              And so as far as Optio Solutions itself,

9  no, I don't recall getting a call from them exactly.

10  If you say I did, and you have it on record, I'm sure

11  that I did.  But as far as do I recall that specific

12  one?  No, I do not.

13      Q.      Okay.  Optio Solutions -- I will

14  represent to you that Optio Solutions' records indicate

15  that they spoke to you on January 7th of 2019.  Do you

16  have any reason to not believe that that date is

17  accurate?

18      A.      No.  I don't.

19      Q.      Do you remember -- and I understand your

20  testimony this morning, but I have to ask these

21  questions to make sure I understand the allegations of

22  the lawsuit.  Do you remember who the individual was

23  and the name of the individual that you spoke with from

24  Optio?

25      A.      No, sir.  I do not.



1      Q.      Do you remember if the person was a male
2  or a female?

3      A.      No, sir.  I do not.

4      Q.      Do you remember the tone or the demeanor
5  of the call?  Was it a polite call or a rude call?

6      A.      Well, I do not remember, but I'm sure you
7  would have it on record, because typically if people
8  are rude to me, I'm fairly rude back.  So if I wasn't
9  rude, I'm sure it was polite.

10      Q.      Okay.  And you briefly described this
11  morning, but I want to make sure I understand.  What
12  was the sum and substance of the communication of the
13  telephone call that you recall?

14      A.      Sir, I don't recall the exact phone call;
15  that's what I'm saying.  If they called me, which
16  you're telling me they did, I would have asked them who
17  they were, and I would have asked them for a number.  I
18  would not have given them any of my children's
19  information.  And then I would have relayed the message
20  to whichever child it was.  So, again, I apologize, but
21  I do not recall that.

22      Q.      Okay.  I'm going to direct your attention
23  to Exhibit 1.

24      A.      Okay.  I have that.

25      Q.      Okay.  And you would see up at the top



1    the caption reads "Erick D. Rigby versus Crosscheck

2    Services, LLC, d/b/a Optio Solutions, LLC."  Do you see

3    that.

4         A.       I do see that, yes, sir.

5         Q.       Okay.  And about a quarter of the way

6    down the page in the middle and in bold and underlined

7    in capital letters it says "Complaint"?

8         A.       Yes.

9         Q.       Okay.  Have you ever seen this document

10   before?

11        A.       No.

12        Q.       Okay.  I'm going to take you over to page

13   3 and paragraph 20.

14        A.       Yes, sir.

15        Q.       Are you there?

16        A.       Yes.  I'm here.

17        Q.       Okay.  And it says, "Moreover, on at

18   least one other occasion, Defendant contacted

19   Plaintiff's mother and disclosed that he owes the

20   subject debt."

21                 Do you recall a conversation with anyone

22   from Optio Solutions where Optio disclosed that your

23   son owed a debt?

24        A.       Sir, I do not recall any specifics.  I'm

25   sure I asked who they were.  I'm sure they said that it



1   was a personal matter, which is in my mind, raising six

2   children, an implication that they owe somebody

3   something.

4          Q.       Understood.

5                   And if I could move you over to page 5,

6   paragraph 30.

7          A.       Yes, sir.

8          Q.       It says, "Defendant violated 15 U.S.C.

9   Section 1692d(2), on at least one occasion: when it

10  contacted Plaintiff's mother and disclosed that

11  Plaintiff owes the subject debt."

12         A.       I see that.

13         Q.       Okay.  And would your answer be any

14  different if I asked you that, do you recall a

15  conversation with Optio where it disclosed that your

16  son owed a debt?

17         A.       No, sir.  My answer is no different.  I

18  do not recall that conversation.

19                  Again, I have raised six children, and I

20  have had these conversations many times.

21         Q.       Understood.

22                  If I could turn your attention to Exhibit

23  Number 2.

24         A.       Yes, sir.

25         Q.       And, again, at the top it is a caption



1    that says, "Erick D. Rigby versus Crosscheck Services,

2    LLC."  Do you see that?

3         A.      Yes, sir.

4         Q.      And about a quarter of the way down the

5    page in bold and capital letters it says, "Plaintiff's

6    Amended Supplemental Answers and Objections to

7    Defendant's Interrogatories."  Do you see that?

8         A.      Yes.

9         Q.      Okay.  Have you ever seen this document

10   before?

11        A.      No.

12        Q.      If I could direct your attention to page

13   number 7.

14        A.      Yes, sir.

15        Q.      And actually it starts on the bottom of

16   page 6.  It says "Interrogatory Number 12," and then

17   goes over onto page 7.

18        A.      Yes, sir.

19        Q.      Okay.  And the response there states,

20   about halfway through the response, "Nevertheless,

21   Plaintiff states that Defendant contacted his mother

22   and disclosed that he owes the subject debt in 2018.

23   Plaintiff does not recall the precise date or the name

24   of the individual he spoke to."

25                Would your answer be any different from



1    the prior questions?  Do you recall a conversation with

2    Optio where Optio disclosed that your son owed a debt?

3         A.      No, sir.  My answer is not any different.

4         Q.      Okay.  Do you recall there being more

5    than one conversation with Optio or just the one, or

6    just the one call that we've been talking about this

7    morning?

8         A.      Sir, I've told you that I don't recall

9    speaking specifically to Optio at all.  So, again, I

10   can't -- I cannot say definitively whether I spoke with

11   them one time or whether I spoke with them ten times.

12        Q.      Understood.

13        A.      I do not know.

14        Q.      Understood.

15                Prior to sitting here for this deposition

16   this morning, did you talk to anyone regarding this

17   phone call that we've been talking about today?

18        A.      Can you please say that again?

19        Q.      I'm going to pick up the telephone,

20   because I'm getting a little feedback.  Maybe that will

21   be a little bit better.

22        A.      Thank you.

23        Q.      Prior to testifying today at this

24   deposition, have you spoken to anyone else about this

25   telephone call that we've discussed this morning?



1          A.          I told my son that I got a subpoena, and

2     I didn't know what it was for.

3          Q.          Okay.  Have you spoken to anyone that you

4     understood to be part of your son's legal team

5     regarding this telephone call?

6          A.          No.  Absolutely not.

7                    MR. LITTLE:  Okay.  That's all of the

8     questions I have for you.  I'm sure Mr. Volheim will

9     have a few.

10                   THE WITNESS:  Okay.

11                          EXAMINATION

12    BY MR. VOLHEIM:

13         Q.          Good morning, Ms. Wood.  My name is Nate

14    Volheim.  I represent your son in this matter.  It's

15    nice to speak to you for the first time today.

16                   How are you?

17         A.          I'm fine, sir.

18         Q.          Good.  And I know you've told Counsel,

19    but you can confirm that you've never spoken with me or

20    anyone from my office before today; is that correct?

21         A.          That is correct.

22         Q.          Okay.  I'm not going to take up much of

23    your time, and I do thank you very much for being here

24    this morning.  I've got about five minutes worth of

25    questions for you.  Okay?



1          Do you have -- have you ever had any

2     relationship with Ashley Furniture Store?

3          A.     I've looked at furniture.

4          Q.     Okay.  Other than looking at furniture,

5     have you ever made any purchases from Ashley Furniture

6     Store?

7          A.     No.

8          Q.     Have you ever provided any cell phone

9     number or telephone number that you had to Ashley

10    Furniture Store?

11         A.     The only thing I have ever provided to

12    Ashley Furniture was when I was looking at some

13    furniture, I gave them my information so that they

14    could call me if a piece of furniture went on sale, and

15    that was for mine and my husband's home, but other than

16    that, no, sir.  I have not.

17         Q.     Okay.  Approximately, and I'm sure I'm

18    asking you to go back in your memory, but approximately

19    when was that?

20         A.     Probably in March of this year.

21         Q.     Okay.  But when you provided your phone

22    number to Ashley, it had nothing to do with your son or

23    any purchases you may or may not have made from Ashley

24    Furniture; is that correct?

25         A.     That is correct.



1      Q.      Okay.  Regarding -- Counsel has been

2   asking you about Optio, and for the record, Optio goes

3   by several different names.  I'm going to give you

4   those names now.  It's also Crosscheck Services, LLC,

5   Optio Solutions, LLC, and Qualia Collection Services.

6              Other than before today, have you ever

7   heard of any of those companies?

8              MR. LITTLE:  Object to the form.

9              THE WITNESS:  Sir, I'm going to give you

10  the same exact answer that I gave the gentleman

11  earlier.  I do not recall.  I get calls for one of my

12  children regularly, and I don't know.

13  BY MR. VOLHEIM:

14     Q.      Understood.

15              To your knowledge, did your son ever

16  provide your cell phone number to either Ashley

17  Furniture or to Optio Solutions?

18     A.      Not to my knowledge.

19     Q.      Did you give your permission for your son

20  to provide your cell phone number to either Ashley

21  Furniture or Optio Solutions?

22     A.      Not that I recall.

23     Q.      Okay.  Just a couple of more questions.

24  And, again, thank you for your time.

25              I'm very clear that you do not remember



1   the specifics of any conversation you may or may not

2   have had with Optio, okay, so I will keep that in mind.

3           However, if your son represented or filed

4   this lawsuit stating that you told him Optio Solutions

5   called you and was looking to collect on a debt, do you

6   have any reason to doubt your son's memory of those

7   events?

8       A.      No.

9               MR. LITTLE:  Object to the form.

10  BY MR. VOLHEIM:

11      Q.      Can you answer that again?  I'm sorry.

12  Counsel's objection, I think, went over your answer.

13      A.      No.  I don't have any reason to doubt my

14  son saying that.

15      Q.      If Optio Solutions would -- okay.  In a

16  situation -- strike that.

17              In a situation where you have received a

18  phone call for one of your children, it sounds like you

19  do relay the message to your kids; is that correct?

20      A.      That is correct.

21      Q.      Do you always relay the message to your

22  children?

23      A.      Yes, I do.

24      Q.      Okay.  And do you do your best to

25  accurately and completely relay the message that you



1    were given to your children?

2        A.      Yes, I do.

3        Q.      Do you have any reason to believe that

4    your son did not accurately and truthfully represent

5    your conversation with him regarding this lawsuit?

6                MR. LITTLE:  Object to the form.

7                THE WITNESS:  No.  I don't have any

8    reason to doubt what my son would say.

9    BY MR. VOLHEIM:

10       Q.      And then Counsel showed you -- just for

11   clarity, Counsel showed you Exhibit 1 and Exhibit 2

12   today.  Do you recall seeing those two exhibits?

13       A.      No.  I have not.

14       Q.      I'm sorry.  Let me clarify.  I asked a

15   bad question.  I apologize.

16               You have not seen them before today; is

17   that correct?

18       A.      That is correct.  I have not seen them

19   before today.

20       Q.      So you didn't participate in the drafting

21   or the creation of those documents?

22       A.      No.  The first I knew of any of this was

23   when I received a subpoena.

24       Q.      Okay.  Your son -- strike that.

25               Either your son or anyone else has not



1   promised you any money or benefits for testifying here

2   today, have they?

3        A.       No.  No.  They have not.

4                 MR. VOLHEIM:  All right.  Ms. Wood, I

5   don't have any other questions, subject to whatever

6   Mr. Little may ask you.

7                    CONTINUED EXAMINATION

8   BY MR. LITTLE:

9        Q.       Ms. Wood, I just have a couple of

10  follow-ups.

11       A.       Okay.

12       Q.       After you received the telephone call

13  that we've been speaking about this morning, do you

14  remember either specifically or generally what you told

15  your son when you contacted him?

16       A.       No.  I do not.  I told you, sir, I relay

17  the messages.  I won't give any creditors their

18  information, but I always call the kids and say, "Look,

19  you need to take care of this.  So and so called about

20  whatever."  And if they don't tell me why they're

21  calling, I tell them, "I don't know why they're

22  calling, but they said that you need to call these

23  people."

24       Q.       And so you don't have a specific

25  recollection -- I know we've talked about it ad



1    nauseam, but just to make sure it's clear -- you don't

2    have a specific recollection as to what Optio said or

3    did not say during this telephone call with you?

4        A.    No, sir.  I do not.

5        MR. LITTLE:  That's all I have.

6        MR. VOLHEIM:  Ms. Wood, I don't have any

7    other questions.  Again, I sincerely thank you for your

8    time this morning.

9        THE WITNESS:  Thank you.

10       MR. LITTLE:  Have a good day.

11       THE WITNESS:  You as well.

12       MR. LITTLE:  Thank you.

13       THE REPORTER:  Counsel, would you like

14    this transcribed?

15       MR. LITTLE:  This is Brendan Little.  I

16    would like a PDF copy, please.

17       THE REPORTER:  Okay.

18       MR. VOLHEIM:  This is Nate Volheim.  I

19    would like a PDF, just electronic copy.  No exhibits.

20       THE REPORTER:  All right.  Thank you.

21       (Whereupon at 10:51 a.m. the

22             deposition was concluded.)

23

24

25



1    COMMONWEALTH OF VIRGINIA AT LARGE, to-wit:

2

3       I, Jill Hudnall Trail, Registered Professional

4    Reporter, a Notary Public for the Commonwealth of

5    Virginia at Large, of qualification in the Circuit

6    Court of the City of Norfolk, Virginia, and whose

7    commission expires May 31, 2021, do hereby certify that

8    the within-named deponent, Pinkie Wood, appeared before

9    me at Norfolk, Virginia; that her examination was

10   recorded in stenotype by me; and that the foregoing

11   constitutes a true, accurate, and complete transcript

12   of such proceeding.

13      I further certify that I am not related to nor

14   otherwise associated with any counsel or party to this

15   proceeding nor otherwise interested in the event

16   thereof.

17      Given under my hand and notarial seal this 18th day

18   of October, 2019, at Norfolk, Virginia.

19

20

21

22

23                          _____
                                   Jill H. Trail, RPR
24

25



**Exhibits**

**Exhibit #**
**1 Wood 10-10-19**
  12:23 21:11
**Exhibit #**
**2 Wood 10-10-19**
  14:22,23 21:11
**Exhibit #**
**3 Wood 10-10-19**
  6:5

**0**

**0842** 7:21 8:17,20

**1**

**1** 12:23 21:11
**10** 4:6
**10:30** 4:6
**10:51** 23:21
**12** 15:16
**15** 14:8
**1692d(2)** 14:9
**19** 8:9,16,21 9:5
**1950** 4:9
**1999** 6:3

**2**

**2** 14:23 21:11
**20** 13:13
**2018** 15:22
**2019** 4:6 7:16 8:3,18
  11:15
**208** 4:7
**23703** 5:24

**3**

**3** 6:5 13:13

**30** 14:6

**5**

**5** 14:5
**5316** 5:23

**6**

**6** 15:16

**7**

**7** 15:13,17
**757 285-9440** 7:18
**757 319-0842** 7:19
**7th** 11:15

**9**

**9440** 8:8,17

**A**

**a.m.** 4:6 23:21
**Absolutely** 17:6
**accordance** 4:8
**accurate** 11:17
**accurately** 20:25
  21:4
**ad** 22:25
**address** 6:1
**ahead** 9:16
**allegations** 4:24
  11:21
**amended** 4:10 15:6
**angry** 9:10
**answers** 5:7 15:6
**apologize** 5:5 9:15
  12:20 21:15
**appearing** 4:22 6:13
**approximately**

  18:17,18
**Ashley** 18:2,5,9,12,
  22,23 19:16,20
**assume** 5:2
**attention** 6:4 12:22
  14:22 15:12

**B**

**back** 8:9,21 10:11
  12:8 18:18
**bad** 21:15
**behalf** 4:2,13
**benefits** 22:1
**bill** 10:2
**bills** 9:18
**bit** 5:6 10:5 16:21
**bold** 13:6 15:5
**bottom** 15:15
**Brendan** 4:18 23:15
**briefly** 12:10
**business** 8:12 9:17

**C**

**call** 8:24 9:1,6,9,12,
  13,21,25 10:9,10,11,
  14,16,18,24 11:4,5,9
  12:5,13,14 16:6,17,
  25 17:5 18:14 20:18
  22:12,18,22 23:3
**called** 10:2 12:15
  20:5 22:19
**calling** 9:8 10:3
  22:21,22
**calls** 11:2 19:11
**capital** 13:7 15:5
**caption** 13:1 14:25
**care** 11:6 22:19
**cell** 7:18,19,22,23,
  24,25 8:4,6,9,10,13
  18:8 19:16,20

**child** 10:9 12:20
**children** 10:5,13
  11:2,5 14:2,19 19:12
  20:18,22 21:1
**children's** 12:18
**clarify** 21:14
**clarity** 21:11
**clear** 6:25 19:25 23:1
**collect** 20:5
**Collection** 19:5
**commenced** 4:20
**commencing** 4:5
**Commonwealth**
  4:4
**communication**
  7:13 12:12
**companies** 19:7
**company** 4:19 10:7
**Complaint** 13:7
**completely** 20:25
**concluded** 23:22
**confirm** 17:19
**Construction** 8:3,5,
  11
**contact** 11:6
**contacted** 13:18
  14:10 15:21 22:15
**continue** 5:15
**CONTINUED** 22:7
**conversation** 13:21
  14:15,18 16:1,5 20:1
  21:5
**conversations**
  14:20
**copy** 23:16,19
**correct** 6:15 7:2
  8:19,23 9:22 17:20,
  21 18:24,25 20:19,20
  21:17,18
**counsel** 4:18 5:5
  17:18 19:1 21:10,11



23:13

**Counsel's** 20:12

**couple** 4:23 19:23
22:9

**Court** 4:7,9,20

**creation** 21:21

**creditors** 22:17

**Crosscheck** 13:1
15:1 19:4

**D**

**d/b/a** 13:2

**date** 7:7 11:16 15:23

**day** 7:11 23:10

**debt** 13:20,23 14:11,
16 15:22 16:2 20:5

**Defendant** 4:2,13
13:18 14:8 15:21

**Defendant's** 15:7

**definitively** 16:10

**delay** 5:7

**demeanor** 12:4

**Depending** 7:9

**deposed** 4:12

**deposition** 4:1
16:15,24 23:22

**difference** 8:20

**direct** 12:22 15:12

**disclosed** 13:19,22
14:10,15 15:22 16:2

**discussed** 16:25

**District** 4:21

**document** 13:9 15:9

**documents** 21:21

**doubt** 20:6,13 21:8

**drafting** 21:20

**E**

**earlier** 19:11

**East** 4:7

**electronic** 23:19

**Elizabeth** 5:21

**ending** 8:17

**Erick** 4:20 6:16,17,
19,20 10:20 13:1
15:1

**events** 20:7

**exact** 7:7 12:14
19:10

**examination** 4:1,14
17:11 22:7

**Exhibit** 6:5 12:23
14:22 21:11

**exhibits** 21:12 23:19

**F**

**fair** 5:3 6:9 7:12

**fairly** 12:8

**February** 8:5

**Federal** 4:20

**feedback** 16:20

**female** 12:2

**filed** 20:3

**fine** 17:17

**finish** 5:10

**follow-ups** 22:10

**form** 19:8 20:9 21:6

**front** 6:7

**furniture** 18:2,3,4,5,
10,12,13,14,24
19:17,21

**G**

**gave** 18:13 19:10

**generally** 6:20 22:14

**gentleman** 19:10

**give** 5:15 10:7 11:3,4
19:3,9,19 22:17

**giving** 5:9

**good** 4:16,17 17:13,
18 23:10

**guess** 6:24

**H**

**halfway** 15:20

**happen** 10:5

**hear** 4:25

**heard** 19:7

**Hey** 11:5

**home** 18:15

**Hourigan** 8:3,4

**Hudnall** 4:3

**husband's** 18:15

**I**

**implication** 14:2

**important** 5:14

**individual** 11:22,23
15:24

**information** 10:8
11:4 12:19 18:13
22:18

**Interrogatories**
15:7

**Interrogatory** 15:16

**J**

**January** 7:16 8:3,9,
16,21 11:15

**Jill** 4:3

**job** 10:9

**June** 6:2

**K**

**kids** 20:19 22:18

**knew** 21:22

**knowledge** 19:15,
18

**L**

**large** 4:5

**Larkspur** 5:23

**lawsuit** 4:20,24
11:22 20:4 21:5

**left** 8:4

**legal** 5:20 17:4

**letters** 13:7 15:5

**likewise** 5:9

**lived** 7:5

**LLC** 4:19 8:25 13:2
15:2 19:4,5

**long** 5:25 7:3 9:2

**looked** 18:3

**M**

**made** 18:5,23

**maintain** 8:13

**make** 6:24 9:11,19
11:21 12:11 23:1

**male** 12:1

**mannerisms** 5:16

**March** 18:20

**matter** 14:1 17:14

**meaning** 6:22

**memory** 18:18 20:6

**message** 12:19
20:19,21,25

**messages** 22:17

**middle** 13:6

**mind** 14:1 20:2


www.zahncourtreporting.com

**mine** 18:15

**minutes** 17:24

**money** 22:1

**month** 7:10

**morning** 4:16,17,22 5:6,14,18 6:5,11,13 10:15 11:20 12:11 16:7,16,25 17:13,24 22:13 23:8

**mother** 13:19 14:10 15:21

**move** 14:5

**moved** 7:7

**N**

**names** 19:3,4

**Nate** 17:13 23:18

**nauseam** 23:1

**nice** 17:15

**Norfolk** 4:8

**normal** 5:14

**Notary** 4:4

**notice** 4:5

**number** 7:15,21 8:8, 17,21,22 10:7 12:17 14:23 15:13,16 18:9, 22 19:16,20

**O**

**Object** 19:8 20:9 21:6

**objection** 20:12

**Objections** 15:6

**occasion** 13:18 14:9

**October** 4:6 8:18 9:4

**office** 17:20

**offices** 4:7

**Optio** 4:19 8:25 9:6,7 10:25 11:8,13,14,24 13:2,22 14:15 16:2,5,

9 19:2,5,17,21 20:2, 4,15 23:2

**oral** 4:1

**owe** 14:2

**owed** 13:23 14:16 16:2

**owes** 13:19 14:11 15:22

**owned** 6:2

**P**

**paragraph** 13:13 14:6

**part** 17:4

**participate** 21:20

**PDF** 23:16,19

**people** 12:7 22:23

**permission** 19:19

**person** 12:1

**personal** 7:22,24,25 8:5,8,22 14:1

**pertains** 10:10

**Peters** 8:11

**phone** 5:6 7:18,19, 22,23,24 8:1,4,6,9, 10,13 9:1 10:7 11:5 12:14 16:17 18:8,21 19:16,20 20:18

**pick** 16:19

**piece** 18:14

**Pinkie** 4:2,12

**Pinky** 5:21

**Plaintiff** 14:11 15:21,23

**Plaintiff's** 13:19 14:10 15:5

**Plume** 4:7

**point** 8:2 9:2

**polite** 12:5,9

**Portsmouth** 5:23

**precise** 15:23

**prior** 16:1,15,23

**Professional** 4:3

**promised** 22:1

**property** 6:2

**provide** 19:16,20

**provided** 8:10 18:8, 11,21

**Public** 4:4

**purchases** 18:5,23

**pursuant** 4:5 6:14

**Q**

**Qualia** 19:5

**quarter** 13:5 15:4

**question** 4:25 5:2,3, 8,10,11 21:15

**questions** 4:23 5:7 11:21 16:1 17:8,25 19:23 22:5 23:7

**R**

**raised** 10:13 14:19

**raising** 14:1

**reads** 13:1

**reason** 11:16 20:6, 13 21:3,8

**recall** 7:6 9:3,5,8,12, 21 10:19,24 11:1,9, 11 12:13,14,21 13:21,24 14:14,18 15:23 16:1,4,8 19:11, 22 21:12

**receive** 8:24

**received** 9:1,5,9 10:16,19 11:2 20:17 21:23 22:12

**receiving** 9:12,21 10:24

**recollection** 22:25 23:2

**record** 11:10 12:7 19:2

**records** 11:14

**Registered** 4:3

**regular** 7:13

**regularly** 19:12

**related** 4:23

**relationship** 18:2

**relay** 20:19,21,25 22:16

**relayed** 12:19

**remember** 7:6 9:10, 24 10:15 11:19,22 12:1,4,6 19:25 22:14

**repeat** 5:1

**rephrase** 5:1

**Reporter** 4:3 23:13, 17,20

**Reporting** 4:7

**represent** 4:19 11:14 17:14 21:4

**represented** 20:3

**reside** 5:22 6:25

**resided** 5:25 7:4

**resides** 7:1

**respond** 5:10

**response** 10:8 15:19,20

**responses** 5:15

**Rigby** 4:20 6:16,17 13:1 15:1

**Road** 5:23

**rude** 12:5,8,9

**Rules** 4:9

**S**

**sale** 18:14

**Section** 14:9

**served** 6:10



**Services** 13:2 15:1
19:4,5

**shoulder** 5:17

**showed** 21:10,11

**shrugs** 5:17

**sincerely** 23:7

**sir** 6:8 8:2,19 9:7,14,
15,23 10:1,17,21
11:1,25 12:3,14 13:4,
14,24 14:7,17,24
15:3,14,18 16:3,8
17:17 18:16 19:9
22:16 23:4

**sit** 9:4

**sitting** 16:15

**situation** 20:16,17

**so's** 10:7

**Solutions** 4:19 8:25
9:6,8 10:25 11:8,13
13:2,22 19:5,17,21
20:4,15

**Solutions'** 11:14

**son** 6:17,18,20,25
7:3,8 9:8,22 10:20
13:23 14:16 16:2
17:1,14 18:22 19:15,
19 20:3,14 21:4,8,24,
25 22:15

**son's** 17:4 20:6

**sounds** 20:18

**speak** 5:1,8 7:8
17:15

**speaking** 16:9 22:13

**specific** 11:11 22:24
23:2

**specifically** 11:1
16:9 22:14

**specifics** 13:24 20:1

**spoke** 11:15,23
15:24 16:10,11

**spoken** 16:24 17:3,
19

**starts** 15:15

**State** 6:25

**states** 15:19,21

**stating** 20:4

**Store** 18:2,6,10

**Street** 4:7

**strike** 20:16 21:24

**subject** 13:20 14:11
15:22 22:5

**subpoena** 6:10,14
17:1 21:23

**substance** 12:12

**sum** 12:12

**Supplemental** 15:6

**Supreme** 4:9

**sworn** 4:12

**T**

**talk** 7:10 16:16

**talked** 22:25

**talking** 10:15 16:6,
17

**team** 17:4

**telephone** 5:17 7:15
8:24 9:6,12,21,25
10:14,16,18,24 12:13
16:19,25 17:5 18:9
22:12 23:3

**telling** 9:9 12:16

**ten** 7:6 16:11

**testify** 6:10

**testifying** 16:23
22:1

**testimony** 11:20

**thing** 9:20 18:11

**Thursday** 4:6

**time** 4:24 8:2 9:2
10:12 16:11 17:15,23
19:24 23:8

**times** 7:11 14:20
16:11

**today** 8:14,18,22 9:4
16:17,23 17:15,20
19:6 21:12,16,19
22:2

**told** 16:8 17:1,18
20:4 22:14,16

**tone** 12:4

**top** 12:25 14:25

**track** 10:21

**Trail** 4:3

**transcribed** 23:14

**true** 8:18

**truthfully** 10:21 21:4

**turn** 6:4 14:22

**turned** 8:5

**typically** 10:4 12:7

**U**

**U.S.C.** 14:8

**underlined** 13:6

**understand** 4:25
9:11,19 11:19,21
12:11

**understood** 5:3 8:7
14:4,21 16:12,14
17:4 19:14

**V**

**verbal** 5:15

**versus** 13:1 15:1

**violated** 14:8

**Virginia** 4:4,8,9 5:23
7:1

**Volheim** 17:8,12,14
19:13 20:10 21:9
22:4 23:6,18

**W**

**wanted** 9:19

**Western** 4:21

**whichever** 10:9
12:20

**White** 8:11

**Wisconsin** 4:21
6:23 7:1,4

**Wood** 4:2,12,16 5:21
17:13 22:4,9 23:6

**work** 7:22,23 8:4,21

**worked** 8:3

**worry** 9:18

**worth** 17:24

**Y**

**year** 6:21 10:19,22,
23 18:20

**years** 7:6

**Z**

**Zahn** 4:7

