1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

ERIC D. RIGBY,                    )
                                  )
     Plaintiff,                   )
                                  )
  v.                              )   Civil Action No.
                                  )   3:19-cv-00036
CROSSCHECK SERVICES, LLC,         )
d/b/a, OPTIO SOLUTIONS, LLC,      )
d/b/a QUALIA COLLECTION,          )
                                  )
     Defendant.                   )

DEPOSITION UPON ORAL EXAMINATION OF

PINKIE WOOD

TAKEN ON BEHALF OF THE DEFENDANT

NORFOLK, VIRGINIA

OCTOBER 10, 2019



## Page 2

```
 1   Appearances:
 2
 3   SULAIMAN LAW GROUP, LTD.
     BY:  NATHAN C. VOLHEIM, ESQUIRE
 4        2500 SOUTH HIGHLAND AVENUE
          SUITE 200
 5        LOMBARD, ILLINOIS  60148
          (630) 568-3056
 6        Nvolheim@sulaimanlaw.com
              Counsel for the Plaintiff
 7            (Appearing via telephone)
 8
     LIPPES MATHIAS WEXLER FRIEDMAN, LLP
 9   BY:  BRENDAN H. LITTLE, ESQUIRE
          50 FOUNTAIN PLAZA
10        SUITE 1700
          BUFFALO, NEW YORK  14202
11        (716) 853-5100
          Blittle@lippes.com
12            Counsel for the Defendant
              (Appearing via telephone)
```

## Page 3

```
           I N D E X
WITNESS                                    PAGE
PINKIE WOOD:
  Examination by Mr. Little                   4
                                             22

  Examination by Mr. Volheim                 17


           E X H I B I T S

                                            PAGE
NO. DESCRIPTION

1   Complaint

2   Plaintiff's Amended Supplemental Answers
      and Objections to Defendant's
      Interrogatories

3   Subpoena


(ALL EXHIBITS WERE MARKED PRIOR TO THE DEPOSITION)
```

## Page 4

1　　　　Deposition upon oral examination of
2　Pinkie Wood, taken on behalf of the Defendant, before
3　Jill Hudnall Trail, Registered Professional Reporter, a
4　Notary Public for the Commonwealth of Virginia at
5　large, taken pursuant to notice, commencing at
6　10:30 a.m. on Thursday, October 10, 2019, at the
7　offices of Zahn Court Reporting, 208 East Plume Street,
8　Norfolk, Virginia; and this in accordance with the
9　Rules of the Supreme Court of Virginia, 1950, as
10　amended.
11
12　　　　PINKIE WOOD was sworn and deposed on
13　behalf of the Defendant as follows:
14　　　　　　EXAMINATION
15　BY MR. LITTLE:
16　　Q.　Good morning, Ms. Wood.
17　　A.　Good morning.
18　　Q.　My name is Brendan Little. I am counsel
19　for Optio Solutions, LLC, and represent that company in
20　a lawsuit commenced by Erick Rigby in Federal Court for
21　the Western District of Wisconsin.
22　　　　Thank you for appearing this morning.
23　I'm going to ask you a couple of questions related to
24　the allegations in that lawsuit. At any time if you
25　didn't hear my question, didn't understand my question,

## Page 5

1　please speak up and ask me to repeat or rephrase the
2　question. Otherwise, I'm going to assume that you
3　understood the question as asked. Is that fair?
4　　A.　Yes.
5　　Q.　I apologize that both counsel are on the
6　phone this morning. There might be a little bit of a
7　delay between our questions and your answers. I will
8　do my best not to ask a question and speak over you
9　while you're giving an answer, and likewise I ask that
10　you try to let me finish my question before you respond
11　to the question. Okay?
12　　A.　Yes.
13　　Q.　And also, obviously, we cannot see you
14　this morning, so it's more important than normal that
15　you continue to give us verbal responses: yes, no, I
16　don't knows. We can't see your mannerisms or your
17　shoulder shrugs, because we're on the telephone this
18　morning. Okay?
19　　A.　Yes.
20　　Q.　Okay. What is your legal name?
21　　A.　Pinky Elizabeth Wood.
22　　Q.　And where do you reside?
23　　A.　5316 Larkspur Road, Portsmouth, Virginia
24　23703.
25　　Q.　And how long have you resided at that



## Page 6

1 address?
2   A.   I have owned that property since June of
3 1999.
4   Q.   Okay. And if I can turn your attention
5 to Exhibit 3 this morning.
6   A.   Okay.
7   Q.   Do you have that in front of you?
8   A.   Yes, sir.
9   Q.   Okay. And is it fair to say that this is
10 the subpoena that you were served with to testify this
11 morning?
12   A.   Yes.
13   Q.   Okay. And you're appearing this morning
14 pursuant to that subpoena?
15   A.   Correct.
16   Q.   Who is Erick Rigby?
17   A.   Erick Rigby is my son.
18   Q.   Okay. How often do you see your son,
19 Erick?
20   A.   Generally I see my son, Erick, once or
21 twice a year when I go there.
22   Q.   And go there meaning?
23   A.   When I go to Wisconsin.
24   Q.   Okay. And, I guess, just so I make sure
25 that it's clear, your son does not reside in the State

## Page 7

1 of Virginia? He resides in Wisconsin?
2   A.   That is correct.
3   Q.   And do you know how long your son has
4 resided in Wisconsin?
5   A.   I believe that he has lived there between
6 nine and ten years. I don't remember, I don't recall
7 the exact date that he moved there.
8   Q.   How often do you speak to your son?
9   A.   Depending on what's going on, sometimes I
10 will talk to him once a month. Sometimes I'll talk to
11 him five times a day.
12   Q.   Okay. But is it fair to say that you're
13 in regular communication with him?
14   A.   Yes.
15   Q.   What was the telephone number that you
16 were using in January of 2019?
17   A.   Well, I may have used -- it may have been
18 on my cell phone at (757) 285-9440, or it may have been
19 on my cell phone (757) 319-0842. I'm not really sure
20 which one.
21   Q.   Okay. The 0842 number, is that a
22 personal cell phone or a work cell phone?
23   A.   It was my work cell phone, and it is now
24 my personal cell phone.
25   Q.   I'm sorry. It was your personal cell

## Page 8

1 phone and --
2   A.   No, sir. At that point in time, in
3 January of 2019, I worked for Hourigan Construction,
4 and that was my work cell phone. I left Hourigan
5 Construction in February and turned it into my personal
6 cell phone.
7   Q.   Understood.
8        And the 9440 number, was that a personal
9 cell phone then back in January of '19?
10   A.   That is the cell phone that is provided
11 to me by Peters & White Construction for their
12 business.
13   Q.   And do you still maintain that cell phone
14 today?
15   A.   Yes, I do.
16   Q.   Okay. So in January of '19, you had both
17 the 9440 number and the number ending in 0842, and
18 that's still true today in October of 2019?
19   A.   That is correct. Yes, sir.
20   Q.   The only difference is that the 0842
21 number was a work number back in January of '19, but
22 today it is a personal number?
23   A.   That is correct.
24   Q.   Did you receive a telephone call from
25 Optio Solutions, LLC?

## Page 9

1   A.   I am not sure who I received a phone call
2 from at this point. That was a long time ago, and I
3 don't recall.
4   Q.   So you, as you sit here today, in October
5 of '19, you don't recall whether you received a
6 telephone call from Optio Solutions?
7   A.   No, sir. I'm not sure it was from Optio
8 Solutions. What I do recall was calling my son and
9 telling him I had received a call, and he got all
10 angry, and that's about as much as I remember.
11   Q.   Okay. So let me make sure I understand
12 you. You recall receiving a telephone call, but you're
13 not quite sure who the call was from?
14   A.   No, sir. I'm not really sure. I'm
15 sorry, but -- I apologize, sir.
16   Q.   Go ahead.
17   A.   But if it's not my business and it's not
18 my bills, I don't worry about it.
19   Q.   No. I understand. I just wanted to make
20 sure that we're saying the same thing.
21        You recall receiving a telephone call
22 regarding your son, correct?
23   A.   Yes, sir.
24   Q.   Okay. But you do not remember who the
25 telephone call was from?



**10**

1  A.  No, sir. I don't. Like I said, if it
2  was a bill and someone called me, I would have asked,
3  "Who is this, and may I ask who is calling?"
4        And typically what happens, because I
5  have six children, so I've had this happen quite a bit,
6  they will say, "I'm so and so from such and such
7  company, and can you give me so and so's phone number
8  or information?" My response is no, because that's not
9  my job. My job is to call the child, whichever one of
10 the six that it pertains to and say, "You got a call
11 from so and so. You need to call them back." And
12 that's -- that's my -- that's what I do all of the time
13 with any one of the six children that I have raised.
14   Q.  Okay. And this telephone call that we've
15 been talking about this morning, do you remember when
16 you received that telephone call?
17   A.  No, sir.
18   Q.  Was this the only telephone call that you
19 can recall in the last year that you received regarding
20 your son, Erick?
21   A.  Truthfully, I don't track, sir. I really
22 don't know. It could have been this year. It could
23 have been last year. Again, I don't know.
24   Q.  Do you recall receiving a telephone call
25 from Optio Solutions at all?

**11**

1  A.  Sir, I don't recall anyone specifically
2  that I have received calls for, for my children,
3  because, again, I don't -- I don't give their
4  information out. When I get the call, I give the
5  children a phone call. I say, "Hey, you got a call
6  from so and so. You need to contact them and take care
7  of whatever."
8        And so as far as Optio Solutions itself,
9  no, I don't recall getting a call from them exactly.
10 If you say I did, and you have it on record, I'm sure
11 that I did. But as far as do I recall that specific
12 one? No, I do not.
13   Q.  Okay. Optio Solutions -- I will
14 represent to you that Optio Solutions' records indicate
15 that they spoke to you on January 7th of 2019. Do you
16 have any reason to not believe that that date is
17 accurate?
18   A.  No. I don't.
19   Q.  Do you remember -- and I understand your
20 testimony this morning, but I have to ask these
21 questions to make sure I understand the allegations of
22 the lawsuit. Do you remember who the individual was
23 and the name of the individual that you spoke with from
24 Optio?
25   A.  No, sir. I do not.

**12**

1   Q.  Do you remember if the person was a male
2  or a female?
3   A.  No, sir. I do not.
4   Q.  Do you remember the tone or the demeanor
5  of the call? Was it a polite call or a rude call?
6   A.  Well, I do not remember, but I'm sure you
7  would have it on record, because typically if people
8  are rude to me, I'm fairly rude back. So if I wasn't
9  rude, I'm sure it was polite.
10  Q.  Okay. And you briefly described this
11 morning, but I want to make sure I understand. What
12 was the sum and substance of the communication of the
13 telephone call that you recall?
14  A.  Sir, I don't recall the exact phone call;
15 that's what I'm saying. If they called me, which
16 you're telling me they did, I would have asked them who
17 they were, and I would have asked them for a number. I
18 would not have given them any of my children's
19 information. And then I would have relayed the message
20 to whichever child it was. So, again, I apologize, but
21 I do not recall that.
22  Q.  Okay. I'm going to direct your attention
23 to Exhibit 1.
24  A.  Okay. I have that.
25  Q.  Okay. And you would see up at the top

**13**

1  the caption reads "Erick D. Rigby versus Crosscheck
2  Services, LLC, d/b/a Optio Solutions, LLC." Do you see
3  that.
4   A.  I do see that, yes, sir.
5   Q.  Okay. And about a quarter of the way
6  down the page in the middle and in bold and underlined
7  in capital letters it says "Complaint"?
8   A.  Yes.
9   Q.  Okay. Have you ever seen this document
10 before?
11  A.  No.
12  Q.  Okay. I'm going to take you over to page
13 3 and paragraph 20.
14  A.  Yes, sir.
15  Q.  Are you there?
16  A.  Yes. I'm here.
17  Q.  Okay. And it says, "Moreover, on at
18 least one other occasion, Defendant contacted
19 Plaintiff's mother and disclosed that he owes the
20 subject debt."
21       Do you recall a conversation with anyone
22 from Optio Solutions where Optio disclosed that your
23 son owed a debt?
24  A.  Sir, I do not recall any specifics. I'm
25 sure I asked who they were. I'm sure they said that it



**Page 14**

was a personal matter, which is in my mind, raising six children, an implication that they owe somebody something.

Q. Understood.

And if I could move you over to page 5, paragraph 30.

A. Yes, sir.

Q. It says, "Defendant violated 15 U.S.C. Section 1692d(2), on at least one occasion: when it contacted Plaintiff's mother and disclosed that Plaintiff owes the subject debt."

A. I see that.

Q. Okay. And would your answer be any different if I asked you that, do you recall a conversation with Optio where it disclosed that your son owed a debt?

A. No, sir. My answer is no different. I do not recall that conversation.

Again, I have raised six children, and I have had these conversations many times.

Q. Understood.

If I could turn your attention to Exhibit Number 2.

A. Yes, sir.

Q. And, again, at the top it is a caption

**Page 15**

that says, "Erick D. Rigby versus Crosscheck Services, LLC." Do you see that?

A. Yes, sir.

Q. And about a quarter of the way down the page in bold and capital letters it says, "Plaintiff's Amended Supplemental Answers and Objections to Defendant's Interrogatories." Do you see that?

A. Yes.

Q. Okay. Have you ever seen this document before?

A. No.

Q. If I could direct your attention to page number 7.

A. Yes, sir.

Q. And actually it starts on the bottom of page 6. It says "Interrogatory Number 12," and then goes over onto page 7.

A. Yes, sir.

Q. Okay. And the response there states, about halfway through the response, "Nevertheless, Plaintiff states that Defendant contacted his mother and disclosed that he owes the subject debt in 2018. Plaintiff does not recall the precise date or the name of the individual he spoke to."

Would your answer be any different from

**Page 16**

the prior questions? Do you recall a conversation with Optio where Optio disclosed that your son owed a debt?

A. No, sir. My answer is not any different.

Q. Okay. Do you recall there being more than one conversation with Optio or just the one, or just the one call that we've been talking about this morning?

A. Sir, I've told you that I don't recall speaking specifically to Optio at all. So, again, I can't -- I cannot say definitively whether I spoke with them one time or whether I spoke with them ten times.

Q. Understood.

A. I do not know.

Q. Understood.

Prior to sitting here for this deposition this morning, did you talk to anyone regarding this phone call that we've been talking about today?

A. Can you please say that again?

Q. I'm going to pick up the telephone, because I'm getting a little feedback. Maybe that will be a little bit better.

A. Thank you.

Q. Prior to testifying today at this deposition, have you spoken to anyone else about this telephone call that we've discussed this morning?

**Page 17**

A. I told my son that I got a subpoena, and I didn't know what it was for.

Q. Okay. Have you spoken to anyone that you understood to be part of your son's legal team regarding this telephone call?

A. No. Absolutely not.

MR. LITTLE: Okay. That's all of the questions I have for you. I'm sure Mr. Volheim will have a few.

THE WITNESS: Okay.

EXAMINATION
BY MR. VOLHEIM:

Q. Good morning, Ms. Wood. My name is Nate Volheim. I represent your son in this matter. It's nice to speak to you for the first time today.

How are you?

A. I'm fine, sir.

Q. Good. And I know you've told Counsel, but you can confirm that you've never spoken with me or anyone from my office before today; is that correct?

A. That is correct.

Q. Okay. I'm not going to take up much of your time, and I do thank you very much for being here this morning. I've got about five minutes worth of questions for you. Okay?



**18**

1  Do you have -- have you ever had any
2  relationship with Ashley Furniture Store?
3  A. I've looked at furniture.
4  Q. Okay. Other than looking at furniture,
5  have you ever made any purchases from Ashley Furniture
6  Store?
7  A. No.
8  Q. Have you ever provided any cell phone
9  number or telephone number that you had to Ashley
10 Furniture Store?
11 A. The only thing I have ever provided to
12 Ashley Furniture was when I was looking at some
13 furniture, I gave them my information so that they
14 could call me if a piece of furniture went on sale, and
15 that was for mine and my husband's home, but other than
16 that, no, sir. I have not.
17 Q. Okay. Approximately, and I'm sure I'm
18 asking you to go back in your memory, but approximately
19 when was that?
20 A. Probably in March of this year.
21 Q. Okay. But when you provided your phone
22 number to Ashley, it had nothing to do with your son or
23 any purchases you may or may not have made from Ashley
24 Furniture; is that correct?
25 A. That is correct.

**19**

1  Q. Okay. Regarding -- Counsel has been
2  asking you about Optio, and for the record, Optio goes
3  by several different names. I'm going to give you
4  those names now. It's also Crosscheck Services, LLC,
5  Optio Solutions, LLC, and Qualia Collection Services.
6  Other than before today, have you ever
7  heard of any of those companies?
8  MR. LITTLE: Object to the form.
9  THE WITNESS: Sir, I'm going to give you
10 the same exact answer that I gave the gentleman
11 earlier. I do not recall. I get calls for one of my
12 children regularly, and I don't know.
13 BY MR. VOLHEIM:
14 Q. Understood.
15 To your knowledge, did your son ever
16 provide your cell phone number to either Ashley
17 Furniture or to Optio Solutions?
18 A. Not to my knowledge.
19 Q. Did you give your permission for your son
20 to provide your cell phone number to either Ashley
21 Furniture or Optio Solutions?
22 A. Not that I recall.
23 Q. Okay. Just a couple of more questions.
24 And, again, thank you for your time.
25 I'm very clear that you do not remember

**20**

1  the specifics of any conversation you may or may not
2  have had with Optio, okay, so I will keep that in mind.
3  However, if your son represented or filed
4  this lawsuit stating that you told him Optio Solutions
5  called you and was looking to collect on a debt, do you
6  have any reason to doubt your son's memory of those
7  events?
8  A. No.
9  MR. LITTLE: Object to the form.
10 BY MR. VOLHEIM:
11 Q. Can you answer that again? I'm sorry.
12 Counsel's objection, I think, went over your answer.
13 A. No. I don't have any reason to doubt my
14 son saying that.
15 Q. If Optio Solutions would -- okay. In a
16 situation -- strike that.
17 In a situation where you have received a
18 phone call for one of your children, it sounds like you
19 do relay the message to your kids; is that correct?
20 A. That is correct.
21 Q. Do you always relay the message to your
22 children?
23 A. Yes, I do.
24 Q. Okay. And do you do your best to
25 accurately and completely relay the message that you

**21**

1  were given to your children?
2  A. Yes, I do.
3  Q. Do you have any reason to believe that
4  your son did not accurately and truthfully represent
5  your conversation with him regarding this lawsuit?
6  MR. LITTLE: Object to the form.
7  THE WITNESS: No. I don't have any
8  reason to doubt what my son would say.
9  BY MR. VOLHEIM:
10 Q. And then Counsel showed you -- just for
11 clarity, Counsel showed you Exhibit 1 and Exhibit 2
12 today. Do you recall seeing those two exhibits?
13 A. No. I have not.
14 Q. I'm sorry. Let me clarify. I asked a
15 bad question. I apologize.
16 You have not seen them before today; is
17 that correct?
18 A. That is correct. I have not seen them
19 before today.
20 Q. So you didn't participate in the drafting
21 or the creation of those documents?
22 A. No. The first I knew of any of this was
23 when I received a subpoena.
24 Q. Okay. Your son -- strike that.
25 Either your son or anyone else has not



## Page 22

1 promised you any money or benefits for testifying here
2 today, have they?
3  A.  No. No. They have not.
4      MR. VOLHEIM: All right. Ms. Wood, I
5 don't have any other questions, subject to whatever
6 Mr. Little may ask you.
7      CONTINUED EXAMINATION
8 BY MR. LITTLE:
9  Q.  Ms. Wood, I just have a couple of
10 follow-ups.
11  A.  Okay.
12  Q.  After you received the telephone call
13 that we've been speaking about this morning, do you
14 remember either specifically or generally what you told
15 your son when you contacted him?
16  A.  No. I do not. I told you, sir, I relay
17 the messages. I won't give any creditors their
18 information, but I always call the kids and say, "Look,
19 you need to take care of this. So and so called about
20 whatever." And if they don't tell me why they're
21 calling, I tell them, "I don't know why they're
22 calling, but they said that you need to call these
23 people."
24  Q.  And so you don't have a specific
25 recollection -- I know we've talked about it ad

## Page 23

1 nauseam, but just to make sure it's clear -- you don't
2 have a specific recollection as to what Optio said or
3 did not say during this telephone call with you?
4  A.  No, sir. I do not.
5      MR. LITTLE: That's all I have.
6      MR. VOLHEIM: Ms. Wood, I don't have any
7 other questions. Again, I sincerely thank you for your
8 time this morning.
9      THE WITNESS: Thank you.
10      MR. LITTLE: Have a good day.
11      THE WITNESS: You as well.
12      MR. LITTLE: Thank you.
13      THE REPORTER: Counsel, would you like
14 this transcribed?
15      MR. LITTLE: This is Brendan Little. I
16 would like a PDF copy, please.
17      THE REPORTER: Okay.
18      MR. VOLHEIM: This is Nate Volheim. I
19 would like a PDF, just electronic copy. No exhibits.
20      THE REPORTER: All right. Thank you.
21      (Whereupon at 10:51 a.m. the
22      deposition was concluded.)

## Page 24

1 COMMONWEALTH OF VIRGINIA AT LARGE, to-wit:
2
3    I, Jill Hudnall Trail, Registered Professional
4 Reporter, a Notary Public for the Commonwealth of
5 Virginia at Large, of qualification in the Circuit
6 Court of the City of Norfolk, Virginia, and whose
7 commission expires May 31, 2021, do hereby certify that
8 the within-named deponent, Pinkie Wood, appeared before
9 me at Norfolk, Virginia; that her examination was
10 recorded in stenotype by me; and that the foregoing
11 constitutes a true, accurate, and complete transcript
12 of such proceeding.
13    I further certify that I am not related to nor
14 otherwise associated with any counsel or party to this
15 proceeding nor otherwise interested in the event
16 thereof.
17    Given under my hand and notarial seal this 18th day
18 of October, 2019, at Norfolk, Virginia.

_____
Jill H. Trail, RPR

**Exhibits**

Exhibit #
1 Wood 10-10-19
    12:23 21:11
Exhibit #
2 Wood 10-10-19
    14:22,23 21:11
Exhibit #
3 Wood 10-10-19
    6:5

**0**

0842  7:21 8:17,20

**1**

1  12:23 21:11
10  4:6
10:30  4:6
10:51  23:21
12  15:16
15  14:8
1692d(2)  14:9
19  8:9,16,21 9:5
1950  4:9
1999  6:3

**2**

2  14:23 21:11
20  13:13
2018  15:22
2019  4:6 7:16 8:3,18
    11:15
208  4:7
23703  5:24

**3**

3  6:5 13:13

30  14:6

**5**

5  14:5
5316  5:23

**6**

6  15:16

**7**

7  15:13,17
757 285-9440  7:18
757 319-0842  7:19
7th  11:15

**9**

9440  8:8,17

**A**

a.m.  4:6 23:21
Absolutely  17:6
accordance  4:8
accurate  11:17
accurately  20:25
    21:4
ad  22:25
address  6:1
ahead  9:16
allegations  4:24
    11:21
amended  4:10 15:6
angry  9:10
answers  5:7 15:6
apologize  5:5 9:15
    12:20 21:15
appearing  4:22 6:13
approximately
    18:17,18
Ashley  18:2,5,9,12,
    22,23 19:16,20
assume  5:2
attention  6:4 12:22
    14:22 15:12

**B**

back  8:9,21 10:11
    12:8 18:18
bad  21:15
behalf  4:2,13
benefits  22:1
bill  10:2
bills  9:18
bit  5:6 10:5 16:21
bold  13:6 15:5
bottom  15:15
Brendan  4:18 23:15
briefly  12:10
business  8:12 9:17

**C**

call  8:24 9:1,6,9,12,
    13,21,25 10:9,10,11,
    14,16,18,24 11:4,5,9
    12:5,13,14 16:6,17,
    25 17:5 18:14 20:18
    22:12,18,22 23:3
called  10:2 12:15
    20:5 22:19
calling  9:8 10:3
    22:21,22
calls  11:2 19:11
capital  13:7 15:5
caption  13:1 14:25
care  11:6 22:19
cell  7:18,19,22,23,
    24,25 8:4,6,9,10,13
    18:8 19:16,20

child  10:9 12:20
children  10:5,13
    11:2,5 14:2,19 19:12
    20:18,22 21:1
children's  12:18
clarify  21:14
clarity  21:11
clear  6:25 19:25 23:1
collect  20:5
Collection  19:5
commenced  4:20
commencing  4:5
Commonwealth
    4:4
communication
    7:13 12:12
companies  19:7
company  4:19 10:7
Complaint  13:7
completely  20:25
concluded  23:22
confirm  17:19
Construction  8:3,5,
    11
contact  11:6
contacted  13:18
    14:10 15:21 22:15
continue  5:15
CONTINUED  22:7
conversation  13:21
    14:15,18 16:1,5 20:1
    21:5
conversations
    14:20
copy  23:16,19
correct  6:15 7:2
    8:19,23 9:22 17:20,
    21 18:24,25 20:19,20
    21:17,18
counsel  4:18 5:5
    17:18 19:1 21:10,11

23:13
**Counsel's** 20:12
**couple** 4:23 19:23 22:9
**Court** 4:7,9,20
**creation** 21:21
**creditors** 22:17
**Crosscheck** 13:1 15:1 19:4

**D**

**d/b/a** 13:2
**date** 7:7 11:16 15:23
**day** 7:11 23:10
**debt** 13:20,23 14:11, 16 15:22 16:2 20:5
**Defendant** 4:2,13 13:18 14:8 15:21
**Defendant's** 15:7
**definitively** 16:10
**delay** 5:7
**demeanor** 12:4
**Depending** 7:9
**deposed** 4:12
**deposition** 4:1 16:15,24 23:22
**difference** 8:20
**direct** 12:22 15:12
**disclosed** 13:19,22 14:10,15 15:22 16:2
**discussed** 16:25
**District** 4:21
**document** 13:9 15:9
**documents** 21:21
**doubt** 20:6,13 21:8
**drafting** 21:20

**E**

**earlier** 19:11
**East** 4:7
**electronic** 23:19
**Elizabeth** 5:21
**ending** 8:17
**Erick** 4:20 6:16,17, 19,20 10:20 13:1 15:1
**events** 20:7
**exact** 7:7 12:14 19:10
**examination** 4:1,14 17:11 22:7
**Exhibit** 6:5 12:23 14:22 21:11
**exhibits** 21:12 23:19

**F**

**fair** 5:3 6:9 7:12
**fairly** 12:8
**February** 8:5
**Federal** 4:20
**feedback** 16:20
**female** 12:2
**filed** 20:3
**fine** 17:17
**finish** 5:10
**follow-ups** 22:10
**form** 19:8 20:9 21:6
**front** 6:7
**furniture** 18:2,3,4,5, 10,12,13,14,24 19:17,21

**G**

**gave** 18:13 19:10

**generally** 6:20 22:14
**gentleman** 19:10
**give** 5:15 10:7 11:3,4 19:3,9,19 22:17
**giving** 5:9
**good** 4:16,17 17:13, 18 23:10
**guess** 6:24

**H**

**halfway** 15:20
**happen** 10:5
**hear** 4:25
**heard** 19:7
**Hey** 11:5
**home** 18:15
**Hourigan** 8:3,4
**Hudnall** 4:3
**husband's** 18:15

**I**

**implication** 14:2
**important** 5:14
**individual** 11:22,23 15:24
**information** 10:8 11:4 12:19 18:13 22:18
**Interrogatories** 15:7
**Interrogatory** 15:16

**J**

**January** 7:16 8:3,9, 16,21 11:15
**Jill** 4:3
**job** 10:9
**June** 6:2

**K**

**kids** 20:19 22:18
**knew** 21:22
**knowledge** 19:15, 18

**L**

**large** 4:5
**Larkspur** 5:23
**lawsuit** 4:20,24 11:22 20:4 21:5
**left** 8:4
**legal** 5:20 17:4
**letters** 13:7 15:5
**likewise** 5:9
**lived** 7:5
**LLC** 4:19 8:25 13:2 15:2 19:4,5
**long** 5:25 7:3 9:2
**looked** 18:3

**M**

**made** 18:5,23
**maintain** 8:13
**make** 6:24 9:11,19 11:21 12:11 23:1
**male** 12:1
**mannerisms** 5:16
**March** 18:20
**matter** 14:1 17:14
**meaning** 6:22
**memory** 18:18 20:6
**message** 12:19 20:19,21,25
**messages** 22:17
**middle** 13:6
**mind** 14:1 20:2



mine 18:15
minutes 17:24
money 22:1
month 7:10
morning 4:16,17,22 5:6,14,18 6:5,11,13 10:15 11:20 12:11 16:7,16,25 17:13,24 22:13 23:8
mother 13:19 14:10 15:21
move 14:5
moved 7:7

**N**

names 19:3,4
Nate 17:13 23:18
nauseam 23:1
nice 17:15
Norfolk 4:8
normal 5:14
Notary 4:4
notice 4:5
number 7:15,21 8:8, 17,21,22 10:7 12:17 14:23 15:13,16 18:9, 22 19:16,20

**O**

Object 19:8 20:9 21:6
objection 20:12
Objections 15:6
occasion 13:18 14:9
October 4:6 8:18 9:4
office 17:20
offices 4:7
Optio 4:19 8:25 9:6,7 10:25 11:8,13,14,24 13:2,22 14:15 16:2,5,

9 19:2,5,17,21 20:2, 4,15 23:2
oral 4:1
owe 14:2
owed 13:23 14:16 16:2
owes 13:19 14:11 15:22
owned 6:2

**P**

paragraph 13:13 14:6
part 17:4
participate 21:20
PDF 23:16,19
people 12:7 22:23
permission 19:19
person 12:1
personal 7:22,24,25 8:5,8,22 14:1
pertains 10:10
Peters 8:11
phone 5:6 7:18,19, 22,23,24 8:1,4,6,9, 10,13 9:1 10:7 11:5 12:14 16:17 18:8,21 19:16,20 20:18
pick 16:19
piece 18:14
Pinkie 4:2,12
Pinky 5:21
Plaintiff 14:11 15:21,23
Plaintiff's 13:19 14:10 15:5
Plume 4:7
point 8:2 9:2
polite 12:5,9
Portsmouth 5:23

precise 15:23
prior 16:1,15,23
Professional 4:3
promised 22:1
property 6:2
provide 19:16,20
provided 8:10 18:8, 11,21
Public 4:4
purchases 18:5,23
pursuant 4:5 6:14

**Q**

Qualia 19:5
quarter 13:5 15:4
question 4:25 5:2,3, 8,10,11 21:15
questions 4:23 5:7 11:21 16:1 17:8,25 19:23 22:5 23:7

**R**

raised 10:13 14:19
raising 14:1
reads 13:1
reason 11:16 20:6, 13 21:3,8
recall 7:6 9:3,5,8,12, 21 10:19,24 11:1,9, 11 12:13,14,21 13:21,24 14:14,18 15:23 16:1,4,8 19:11, 22 21:12
receive 8:24
received 9:1,5,9 10:16,19 11:2 20:17 21:23 22:12
receiving 9:12,21 10:24
recollection 22:25 23:2

record 11:10 12:7 19:2
records 11:14
Registered 4:3
regular 7:13
regularly 19:12
related 4:23
relationship 18:2
relay 20:19,21,25 22:16
relayed 12:19
remember 7:6 9:10, 24 10:15 11:19,22 12:1,4,6 19:25 22:14
repeat 5:1
rephrase 5:1
Reporter 4:3 23:13, 17,20
Reporting 4:7
represent 4:19 11:14 17:14 21:4
represented 20:3
reside 5:22 6:25
resided 5:25 7:4
resides 7:1
respond 5:10
response 10:8 15:19,20
responses 5:15
Rigby 4:20 6:16,17 13:1 15:1
Road 5:23
rude 12:5,8,9
Rules 4:9

**S**

sale 18:14
Section 14:9
served 6:10



**Services** 13:2 15:1 19:4,5
**shoulder** 5:17
**showed** 21:10,11
**shrugs** 5:17
**sincerely** 23:7
**sir** 6:8 8:2,19 9:7,14,15,23 10:1,17,21 11:1,25 12:3,14 13:4,14,24 14:7,17,24 15:3,14,18 16:3,8 17:17 18:16 19:9 22:16 23:4
**sit** 9:4
**sitting** 16:15
**situation** 20:16,17
**so's** 10:7
**Solutions** 4:19 8:25 9:6,8 10:25 11:8,13 13:2,22 19:5,17,21 20:4,15
**Solutions'** 11:14
**son** 6:17,18,20,25 7:3,8 9:8,22 10:20 13:23 14:16 16:2 17:1,14 18:22 19:15,19 20:3,14 21:4,8,24,25 22:15
**son's** 17:4 20:6
**sounds** 20:18
**speak** 5:1,8 7:8 17:15
**speaking** 16:9 22:13
**specific** 11:11 22:24 23:2
**specifically** 11:1 16:9 22:14
**specifics** 13:24 20:1
**spoke** 11:15,23 15:24 16:10,11
**spoken** 16:24 17:3,19
**starts** 15:15

**State** 6:25
**states** 15:19,21
**stating** 20:4
**Store** 18:2,6,10
**Street** 4:7
**strike** 20:16 21:24
**subject** 13:20 14:11 15:22 22:5
**subpoena** 6:10,14 17:1 21:23
**substance** 12:12
**sum** 12:12
**Supplemental** 15:6
**Supreme** 4:9
**sworn** 4:12

**T**

**talk** 7:10 16:16
**talked** 22:25
**talking** 10:15 16:6,17
**team** 17:4
**telephone** 5:17 7:15 8:24 9:6,12,21,25 10:14,16,18,24 12:13 16:19,25 17:5 18:9 22:12 23:3
**telling** 9:9 12:16
**ten** 7:6 16:11
**testify** 6:10
**testifying** 16:23 22:1
**testimony** 11:20
**thing** 9:20 18:11
**Thursday** 4:6
**time** 4:24 8:2 9:2 10:12 16:11 17:15,23 19:24 23:8
**times** 7:11 14:20 16:11

**today** 8:14,18,22 9:4 16:17,23 17:15,20 19:6 21:12,16,19 22:2
**told** 16:8 17:1,18 20:4 22:14,16
**tone** 12:4
**top** 12:25 14:25
**track** 10:21
**Trail** 4:3
**transcribed** 23:14
**true** 8:18
**truthfully** 10:21 21:4
**turn** 6:4 14:22
**turned** 8:5
**typically** 10:4 12:7

**U**

**U.S.C.** 14:8
**underlined** 13:6
**understand** 4:25 9:11,19 11:19,21 12:11
**understood** 5:3 8:7 14:4,21 16:12,14 17:4 19:14

**V**

**verbal** 5:15
**versus** 13:1 15:1
**violated** 14:8
**Virginia** 4:4,8,9 5:23 7:1
**Volheim** 17:8,12,14 19:13 20:10 21:9 22:4 23:6,18

**W**

**wanted** 9:19
**Western** 4:21

**whichever** 10:9 12:20
**White** 8:11
**Wisconsin** 4:21 6:23 7:1,4
**Wood** 4:2,12,16 5:21 17:13 22:4,9 23:6
**work** 7:22,23 8:4,21
**worked** 8:3
**worry** 9:18
**worth** 17:24

**Y**

**year** 6:21 10:19,22,23 18:20
**years** 7:6

**Z**

**Zahn** 4:7

