IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERICK D. RIGBY,

      Plaintiff,

 v.

CROSSCHECK SERVICES, LLC, d/b/a
OPTIO SOLUTIONS, LLC d/b/a
QUALIA COLLECTION SERVICES,

      Defendant.[1]

OPINION and ORDER

19-cv-36-jdp

---

  Plaintiff Erick D. Rigby contends that defendant Optio Solutions, LLC violated the Fair Debt Collection Practice Act (FDCPA) and the Wisconsin Consumer Act (WCA) while attempting to collect a debt that Rigby owed to Ashley Furniture HomeStore. Optio called Rigby 76 times over the course of four-and-a-half months. Rigby contends that Optio violated the law by disclosing his debt to his mother, placing calls at inconvenient times, threatening to sue and criminally prosecute him, and calling him with the intent of annoying, abusing, or harassing him.

  Optio has moved for summary judgment on all of Rigby's claims. The court will grant the motion on two of Rigby's FDCPA claims because Rigby has failed to adduce evidence that Optio disclosed his debt to his mother and placed calls at inconvenient times. But the court will deny the rest of Optio's motion. There are genuine disputes of material fact about whether

---

[1] The caption of Rigby's complaint names "Crosscheck Services, LLC" as the defendant doing business under the names Optio Solutions, LLC and Qualia Collection Services. But in its answer and summary judgment brief, Optio says that it is owned by a corporation called "CrossCheck, Inc.," and that it "has no association with CrossCheck Services, LLC." Dkt. 4, at 1 n.1, and Dkt. 17, at 1 n.1. Neither party has moved to amend the caption or dismiss Crosscheck Services, LLC from the case, so the court has not modified the caption.

Optio threatened to sue or criminally prosecute Rigby, and whether Optio called him with the intent to annoy, abuse, or harass him. Those FDCPA claims and the associated WCA claims will proceed to trial.

The parties previously moved to extend all pretrial deadlines by 60 days, Dkt. 35, which the court denied. Dkt. 36. Rigby has now filed a motion seeking clarification about the reason for the denial. Dkt. 37. The court provides the following clarification: although we will not be able to begin trial on May 11, 2020, the court expects to have cases ready for trial at the earliest available opportunity. Blanket extensions will create an overwhelming backlog that the court will not be able to address once the coronavirus emergency abates.

## UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

In July of 2018, Erick Rigby bought furniture from Ashley's Furniture HomeStore, which he paid for by check. Rigby's checks bounced, and his debt was placed with defendant Optio Solutions, LLC, a debt collection agency. Between August 31, 2018 and January 15, 2019, Optio called Rigby 76 times—sometimes multiple times in one day. Rigby would routinely answer the calls, realize that it was Optio, and then hang up. But on eight occasions, Rigby had conversations with Optio representatives. Rigby says that during at least one of these conversations, an Optio representative threatened to sue him and to file criminal charges. Optio denies this. Rigby also says that Optio called his mother and told her that Rigby owed a debt. Optio concedes that it called Rigby's mother in January 2019, but it denies having told her about Rigby's debt.

On three occasions, Rigby asked Optio to pause or stop the calls. The first such conversation occurred on October 2, 2018, during Optio's sixth call to Rigby. Rigby told Optio that he couldn't pay the debt that day and asked that Optio call him back in two weeks. The Optio representative agreed, but Optio ultimately waited only ten days before resuming the calls.

The second conversation occurred on December 12, 2018, by which point Rigby had received more than 50 calls. Rigby told the Optio representative that he did "not want any[] more phone calls" from Optio and that he "only want[ed] contact by mail." Dkt. 20-1, at 21. Nonetheless, Optio called Rigby back mere minutes after this conversation, but the call ended after only one second. *See* Dkt. 31-5, at 2. Rigby, who was by this point "very upset," called Optio back and asked to speak to a supervisor. Dkt. 20-1, at 20. Ultimately, that conversation resulted in Rigby agreeing to a payment plan with Optio. But Rigby didn't end up making any payments because he didn't submit the required paperwork, and Optio resumed calling Rigby.

The third conversation occurred on January 8, 2019, when Rigby told an Optio representative that he was working with someone on "correcting [his] credit" and that he did "not need t[o] t[alk] to" Optio. *Id.* at 9. Optio continued calling Rigby even so, up until the day before Rigby filed this lawsuit on January 16, 2019.

ANALYSIS

A. Overview of claims and summary judgment standard

Rigby asserts claims under the FDCPA and the WCA: (1) Optio's alleged disclosure of Rigby's debt to his mother, in violation of 15 U.S.C. § 1692b(2) of the FDCPA; (2) Optio's placement of calls to Rigby at times that Optio knew or should have known were inconvenient

3

to Rigby, in violation of 15 U.S.C. § 1692c(a)(1) of the FDCPA; (3) Optio's threats to file litigation and pursue criminal charges against Rigby, in violation of 15 U.S.C. §§ 1692e and 1692f of the FDCPA and § 427.104(1)(j) of the WCA; and (4) Optio's use of phone calls to annoy, abuse, or harass Rigby, in violation of 15 U.S.C. § 1692d of the FDCPA and § 427.104(1)(h) of the WCA.

The parties do not consistently distinguish between the FDCPA and WCA claims in their analysis, and the Wisconsin Supreme Court has imported the standards applicable under the FDCPA in analyzing WCA claims. *See Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 45, 325 Wis. 2d 135, 161–62, 785 N.W.2d 302, 314. So the court will analyze the FDCPA claims and WCA claims together.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleischman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). It may not simply rely on the allegations in its pleadings to create a genuine dispute but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [its] favor[.]" *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

**B. Alleged disclosure of Rigby's debt to his mother**

Under 15 U.S.C. § 1692b(2), "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the

4

consumer" is prohibited from disclosing to the third party "that such consumer owes any debt." In his complaint, Rigby alleged that Optio contacted his mother and "disclosed that [he] owe[d] the subject debt." Dkt. 1, ¶ 30. Optio doesn't dispute that it called Rigby's mother, but it contends that Rigby hasn't adduced admissible evidence that Optio's representative disclosed to her that Rigby owed a debt. The court agrees.

At her deposition in this case, Rigby's mother testified that she remembered receiving a call from someone asking about Rigby, but she could not remember the identity of the caller or the substance of their conversation. Dkt. 26 (Wood Dep. 9:1–12:21). When asked if she recalled whether the caller had disclosed that her son owed a debt, she said "Sir, I do not recall any specifics. I'm sure I asked who they were. I'm sure they said that it was a personal matter, which is in my mind, raising six children, an implication that they owe somebody something." *Id.* at 13:24–14:3. This testimony sheds no light on whether Optio improperly disclosed Rigby's debt, and it isn't sufficient to raise an inference that Optio violated § 1692b(2).

Attempting to surmount this evidentiary deficit, Rigby points to his deposition testimony regarding the conversation he had with his mother following the call from Optio:

> Q. [W]hat did your mom say [Optio] told her?
>
> A. That was so long ago, I don't recall exactly what they said -- what she said.
>
> Q. Okay. Do you know whether [Optio] disclosed that you owed a debt to your mother?
>
> A. Yes, because that upset me.
>
> Q. How do you know that?
>
> A. Well, that's what she said. She said that they called and that they were looking to get ahold of me because I owed them money.

5

Dkt. 24 (Rigby Dep. 30:10–21). This testimony is hearsay, so it isn't admissible as evidence that Optio disclosed Rigby's debt to his mother. *See* Fed. R. Evid. 802. Rigby doesn't contend otherwise, nor does he argue that the testimony falls into a hearsay exception. Instead, he notes that his mother testified that she "didn't have any reason to doubt" Rigby's memory of their conversation. Dkt. 26 (Wood Dep. 21:7–8). But regardless whether Rigby's account of his conversation with his mother is accurate, that conversation is not admissible evidence of any improper disclosure by Optio. Rigby doesn't have personal knowledge of what the Optio representative said to his mother, and his mother doesn't remember the substance of the call. "[A] court may consider only admissible evidence in assessing a motion for summary judgment," *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009), and Rigby's second-hand account isn't admissible.

Rigby faults Optio for the lack of evidence, complaining that he "should not be punished because of Optio's failure to record conversations." Dkt. 31, at 14. But it is Rigby's burden to put forward evidence in support of his claims, not Optio's. "When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own." *Marion v. Radtke*, 641 F.3d 874, 876–77 (7th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). There is no admissible evidence that Optio made improper disclosures to Rigby's mother, so the court will dismiss the § 1692b(2) claim.

## C. Placement of calls at times inconvenient for Rigby

Section 1692c(a)(1) of the FDCPA prohibits debt collectors from communicating with consumers "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." The statute also provides that calls made between 8 a.m.

and 9 p.m. are presumptively convenient "[i]n the absence of knowledge of circumstances to the contrary[.]" *Id.* To survive summary judgment on a § 1692c(a)(1) claim, a plaintiff must adduce evidence that he gave the defendant some "reason to believe that . . . phone calls[] made during presumptively convenient hours[] were inconvenient." *Sellers v. State Collection Serv., Inc.*, No. 15-cv-148-jdp, 2016 WL 1179231, at *3 (W.D. Wis. Mar. 24, 2016). The focus is on whether the defendant displayed "disregard of a known or obvious time or place restriction—like calling someone at midnight." *Id.* (quoting *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 470 (E.D.N.Y. 2012)).

Here, there is no dispute that all of Optio's calls to Rigby were placed between the presumptively convenient hours of 8 a.m. to 9 p.m. But Rigby points to three instances in which he says he communicated to Optio's representatives that their calls were made at an inconvenient time or place and was ignored. First, he notes that on October 2, 2018, he told Optio that he "c[ouldn't] pay anything today" and "asked that [Optio] call him in 2 weeks." Dkt. 20-1, at 32. The Optio representative indicated that he would "call [him] then," *id.*, but ultimately Optio waited only ten days—until October 12—to resume calling Rigby. *See* Dkt. 31-5, at 2.

Rigby contends that his statement was sufficient to put Optio on notice that any calls over the following two weeks would be inconvenient for him. But Rigby stated that Optio should refrain from calling him for two weeks because he didn't have funds to pay Optio, not because the time or place of the call was inconvenient. Typically, debt collectors violate § 1692c(a)(1) when they persist in calling a consumer at work after being told to stop, or when they call at specific times of day that the consumer has told them are inconvenient. *See, e.g., Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 773 (7th Cir. 2003); *Sellers*, 2016 WL

1179231, at *3–4. Under Rigby's reasoning, a consumer could indefinitely delay debt collection efforts simply by saying that he couldn't pay, and the debt collector would have to refrain from calling the consumer until the time the consumer said that he could pay. Rigby doesn't cite and the court is not aware of any cases in which courts have understood § 1692c(a)(1) to protect consumers from the inability to pay a debt at the time of a debt collection call. So Rigby's October 2, 2018 statement to Optio does not create a genuine issue about whether Optio violated § 1692c(a)(1).

The second and third calls also did not violate § 1692c(a)(1) for the same reasons. Rigby says that on December 12, 2018, after receiving three Optio phone calls in quick succession, he told the Optio representative that he did "not want any[] more phone calls" from Optio and that he "only want[ed] contact by mail." Dkt. 20-1, at 21. Nonetheless, Optio proceeded to call Rigby a fourth time, *see* Dkt. 31-5, at 2, prompting a "highly irritated" Rigby to call Optio back and ask to speak to a supervisor. Dkt. 24 (Rigby Dep. 23:12–24:18). Likewise, on January 8, 2019, Rigby told an Optio representative that he was working with someone on "correcting [his] credit" and that he did "not need t[o] t[alk] to" Optio, at which point he ended the call. Dkt. 20-1, at 9.

These instances might raise triable issues about whether Optio intended to annoy, abuse, or harass Rigby in violation of 15 U.S.C. § 1692d. That issue is discussed below. But these are not calls made at times or places that Optio knew or should have known were inconvenient. Rigby made it clear that he found the calls irritating and that he wanted them to stop, but he said nothing that would specifically alert Optio that it was calling Rigby at inconvenient times or places. *See, e.g.*, *Sellers*, 2016 WL 1179231, at *3 (no violation of § 1692c(a)(1) where plaintiff "stated only that he did not want to talk" and "wanted defendant

8

to stop calling him, period," but "did not say anything about the timing or location of the phone calls"). So the court will grant summary judgment to Optio on Rigby's § 1692c(a)(1) claims.

**D. Threats to sue or criminally prosecute Rigby**

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including by threatening to "take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e, e(5). Section 1692f prohibits debt collectors from employing "unfair or unconscionable means to collect or attempt to collect any debt." And Wis. Stat. § 427.104(1)(j) prohibits debt collectors from "claim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist." Rigby contends that Optio did all of these things when it threatened him with litigation and criminal charges.

Optio does not dispute that such threats would provide a basis for liability under these statutory provisions. Instead, it contends that Rigby has failed to adduce sufficient evidence that Optio actually made these threats. There is no record of threats in Optio's call records, in which Optio representatives summarized the contents of their conversations with Rigby. *See* Dkt. 20-1; Dkt. 33-1; Dkt. 33-2. Nor were any threats made during Optio's December 13, 2018 phone call to Rigby, which is the only conversation that Optio recorded and submitted into the record in this case. *See* Dkt. 20-2 (audio recording). The only evidence that Optio threatened Rigby is Rigby's own testimony. At his deposition, Rigby testified that during one phone call, an Optio representative said that Optio was "going to pursue criminal charges of theft," and that on one or more occasions, Optio "threatened to sue [him]." Dkt. 24 (Rigby

9

Dep. 26: 20–21, 10). Rigby could not recall the specific date of these conversations, nor could he remember the name of the person or persons who made these threats.

Optio contends that Rigby's testimony is "nothing more than his own self-serving speculation," which is insufficient to survive summary judgment. Dkt. 17, at 14. But Rigby was not speculating: he was testifying to a specific memory of a conversation that he had participated in. "[U]ncorroborated self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (citation and quotation marks omitted). Optio may not think Rigby's testimony is credible, but "district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011) (internal citations and quotation marks omitted). So the court will deny Optio's motion for summary judgment on Rigby's 15 U.SC. §§ 1692e and 1692f and Wis. Stat. § 427.104(1)(j) claims.

**E. Phone calls intended to annoy, abuse, or harass Rigby**

Under § 1692d of the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. That prohibition encompasses "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).[2] Similarly,

---

[2] Rigby cites both § 1692d and 1692d(5) as bases for his claims, but he doesn't allege any harassing conduct apart from phone calls. Where the "evidence and allegations in a case fall entirely under § 1692d(5), the [c]ourt need not separately analyze [a plaintiff's] claims under

Wis. Stat. § 427.104(1)(h) prohibits debt collectors from engaging in conduct "which can reasonably be expected to threaten or harass the customer or a person related to the customer." Rigby contends that Optio's numerous and persistent phone calls, in combination with the call to his mother and Optio's threat of litigation and criminal prosecution, create a triable issue about whether Optio intended to annoy, abuse, or harass him within the meaning of § 1692d(5). The court agrees.

"There is no precise test for determining when repeated phone calls violate § 1692d(5)," but "courts of this circuit typically look to the volume and pattern of calls made, as well as whether a plaintiff has requested that a collection agency stop calling." *Bruner v. AllianceOne Receivables Mgmt., Inc.*, No. 15 C 9726, 2017 WL 770993, at *2 (N.D. Ill. Feb. 28, 2017) (collecting cases). Such evidence can raise genuine issues about whether the debt collector intended to annoy, abuse, or harass the consumer, as opposed to simply contact him. Here, it is undisputed that Optio called Rigby a total of 76 times over a period of four-and-a-half months, and that it would sometimes repeatedly call Rigby within the span of a few minutes. It is also undisputed that Rigby asked Optio to pause or stop the calls on three occasions. Nonetheless, Optio argues that no reasonable jury could conclude that it intended to annoy, abuse, or harass Rigby because the volume and pattern of calls that Rigby received do not rise to the level of a § 1692d(5) violation as a matter of law, and because there is circumstantial evidence that Optio was merely trying to get in touch with Rigby.

---

1692d." *Kube v. Creditors Collection Bureau, Inc.*, No. 10 C 7416, 2012 WL 3848300, at *1 (N.D. Ill. Aug. 30, 2012). So the court will focus its analysis on whether Rigby has adduced evidence that Optio called him repeatedly or continuously with intent to annoy, abuse, or harass him.

In support of its argument that the volume and pattern of its phone calls are insufficient to violate the FDCPA as a matter of law, Optio cites several out-of-circuit cases in which district courts dismissed § 1692d(5) claims when the plaintiff received a similar number of calls over a similar time period as the one in this case. *See* Dkt. 17, at 10–11. But a substantial number of decisions from district courts in the Seventh Circuit suggest that "[a]s a general rule, whether the volume and pattern of a debt collector's calls violates the FDCPA is a jury question." *Losch v. Advanced Call Ctr. Techs., LLC*, No. 15 C 6644, 2017 WL 1344524, at *3 (N.D Ill. Apr. 12, 2017). Courts in this circuit have generally declined to dismiss § 1692d(5) claims as a matter of law, even when they were based on smaller call volumes than the one at issue here. *See, e.g., Bruner*, 2017 WL 770993, at *2–3 (eleven phone calls over six weeks, "an average of [approximately] two calls per week[,] plausibly indicates intent to harass or annoy"); *Swearingen v. Portfolio Recovery Assocs., LLC*, 892 F. Supp. 2d 987, 992–93 (N.D. Ill. 2012) (denying summary judgment to debt collector who placed between 22 and 32 calls over the course of ten weeks); *Majeski v. I.C. Sys., Inc.*, No. 08 CV 5583, 2010 WL 145861, at *2–4 (N.D. Ill. Jan 8, 2010) (denying summary judgment to debt collector who placed 67 calls to plaintiff over the course of six months).

As a corollary to its argument about call volume, Optio contends that Rigby's § 1692d(5) claim fails because its 76 calls to Rigby yielded only eight actual conversations. Optio again cites district courts in other circuits that have held that significant call-to-conversation ratios can be fatal to a § 1692d(5) claim. *See* Dkt. 17, at 11–12. But district courts in this circuit tend to allow the jury to resolve such questions, regardless of the call-to-conversation ratio. *See, e.g., Kube*, 2012 WL 3848300, at *2–3 ("the reasonableness of the call volume and pattern . . . remain[ed] a genuine issue of material fact for trial" when the debt

collector called the plaintiff 98 times over almost nine months, even though plaintiff answered no more than six calls); *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 810 (N.D. Ill. 2010) (same when debt collector called 31 times over a 12 day period, even though plaintiff began blocking calls); *Majeski*, 2010 WL 145861, at *2–4 (same when debt collector placed 67 calls over six months, even though debtors screened their calls and answered the phone extremely rarely).

Optio argues that circumstantial evidence suggest that Optio intended only to get in touch with Rigby, not to harass him. As evidence of its legitimate intent, Optio notes that on December 12, 2018, after initially telling Optio to stop calling him and to contact him only by mail, Rigby called Optio back and said he couldn't pay anything until January but that he would be willing to pay $100.00 per month. Dkt. 34, ¶ 12. The following day, Rigby had a 20-minute conversation with an Optio representative, during which they agreed on a payment plan. To set up the payment plan, Optio needed Rigby to sign an authorization form. When Rigby didn't return the authorization form Optio had mailed him, Optio called Rigby several more times, but those follow-up attempts were unsuccessful. Optio says that this proves that it was only calling Rigby to get in touch with him about the authorization form. Even assuming this were true, it would only apply the 16 calls that Optio made to Rigby after December 13. *See* Dkt. 31-5, at 2–3. It would shed no light on Optio's intent in placing the earlier calls.

There is some tension between § 1692d(5)'s prohibitions and the notion that debt collection industry is a legitimate, presumptively legal industry. At a high level of abstraction, all debt collection could be considered harassment, and the statute gives little guidance about the line between persistent but legitimate debt collection efforts and harassment. Each case calls for a fact-intensive inquiry. If the totality of the circumstances indicates no improper

13

intent to harass the debtor, summary judgment will be appropriate. But in cases like this one, where the evidence is mixed and reasonable minds might disagree, the question of intent is properly left to the jury.

Ultimately, the court is persuaded that a reasonable jury could find that Optio intended to annoy, abuse, or harass Rigby for four reasons. First, as Optio continued to call Rigby week after week with no success, "any belief that [Rigby] was not answering the calls because [he] missed them inadvertently or that [he] would have wanted to be called at a different time became less and less reasonable—or so a reasonable jury could find." *Losch*, 2017 WL 1344524, at *3. Second, Rigby asked Optio to pause or cease the calls on three occasions. Optio says that these requests were equivocal, or that Rigby subsequently withdrew them by calling Optio back, but a reasonable jury might conclude that Rigby's requests were sufficient to have put Optio on notice that its calls were harassing and unwelcome, and that Optio's persistence in calling Rigby demonstrated an intent to harass. Third, Rigby adduces evidence that Optio called his mother in January 2019, even though Optio had already contacted Rigby directly and knew how to get in touch with him by that point. This might lead a reasonable jury to conclude that Optio intended to humiliate or harass Rigby rather than obtain his location information. Fourth, Rigby says that Optio threatened him with litigation and criminal charges. If a jury were to believe Rigby's account, it could reasonably conclude that Optio did so with an intent to abuse or harass Rigby. The court will deny Optio's motion for summary judgment on the 15 U.S.C. § 1692d(5) and Wis. Stat. § 427.104(1)(h) claims.

ORDER

IT IS ORDERED that:

1. Defendant Optio Solutions, LLC's motion for summary judgment, Dkt. 16, is GRANTED in part and DENIED in part. The case will proceed to trial on plaintiff Erick D. Rigby's claims under 15 U.S.C. §§ 1692d(5), e, and 1692f and Wis. Stat. § 427.104(1)(h) and (j). The remaining claims are DISMISSED.

2. Plaintiff Erick Rigby's motion for clarification, Dkt. 37, is GRANTED. The parties must adhere to the pretrial deadlines set out in the pretrial conference order, Dkt. 8.

Entered March 27, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge